ESTATE OF NALE (Charles) : NALE (Bernard), personally and as executor of the estate of Charles Nale, Deceased, and others, Appellants, v. O'DELL, Respondent.

*No. 168. Submitted under sec. (Rule) 251.54 November 28, 1973.—Decided January 4, 1974.*
(Also reported in 213 N. W. 2d 552.)

---

For the appellants the cause was submitted on the briefs of *Donald W. Kaatz* of Madison.

For the respondent the cause was submitted on the brief of *Conway & Conway* of Baraboo.

BEILFUSS, J. The controlling issues are (1) whether the court erred in admitting evidence as to conversations with a deceased person, and (2) whether the statute of limitations, sec. 893.21 (5),[2] Stats., barred all but two years of the claim for personal services.

Sec. 885.16, Stats., commonly known as the dead man's statute, provides, insofar as pertinent here, as follows:

"**Transactions with deceased or insane persons.** No party or person in his own behalf or interest, . . . shall be examined as a witness in respect to any transaction or communication by him *personally* with a deceased . . . person . . . unless such opposite party shall first, in his own behalf, introduce testimony of himself or some other person concerning such transaction or communication, . . ." (Emphasis supplied.)

During the course of the trial Sylvia O'Dell was called as a witness in her own behalf. She did testify as to her response to the ad and the nature and extent of her services in behalf of the deceased Charles Nale. She was not permitted to testify as to any conversations she had with him concerning any employment or compensation agreements. However, she did testify that she heard a conversation between Nale and her neighbors, the Hardimans, who took her to Hillsboro. She stated the conver-

---

[2] Formerly sec. 330.21 (5), Stats. 1963.

sation was not directed to her or in her presence but was between the deceased and the Hardimans while she was in the kitchen of Nale's home and Nale and the Hardimans were in an adjoining room. Mrs. O'Dell testified that Nale told the Hardimans that if she (Mrs. O'Dell) stayed with him, did his work and looked after and took care of him as long as he lived, after his death she would be paid well. The Hardimans were both deceased at the time of the trial. The attorney for the objectors objected as to the competency of the witness under the dead man's statute and also upon the ground of hearsay. The court overruled the objections and allowed her to testify.

The testimony given by Mrs. O'Dell contained only the statement of the deceased and she did not testify as to anything the Hardimans said, either to Nale or to her, therefore it was not hearsay as to any statements the Hardimans made and it was a declaration against interest by the deceased and, as such, an exception to the hearsay rule. We believe the court properly overruled the hearsay objection.

The question as to her competency to testify because of the dead man's statute remains.

Counsel for Mrs. O'Dell argues that the deceased's statement was not made to her and not even in her presence and is not within the prohibitions of the statute.

Had the Hardimans survived and testified, it is clear their testimony could have been received.[3]

In *Estate of Kemmerer, supra,* this court stated at page 486:

". . . At least two requisites are necessary to disqualify a witness under sec. 325.16 [855.16]: (1) That the witness has a certain type of interest, and (2) that the testimony relates to a transaction or communication had

[3] *Estate of Kemmerer* (1962), 16 Wis. 2d 480, 484, 486, 114 N. W. 2d 803.

by the witness personally with the deceased. Either one alone is not sufficient to disqualify the witness."

The witness, Mrs. O'Dell, did have a disqualifying interest but the conversation was not with the deceased personally and not even in her presence. The claimant, Mrs. O'Dell, could have been cross-examined as to the transaction or communication and could have been cross-examined as to the existence and accuracy of her recollection of the statements of the deceased made to the Hardimans. We recognize this right of cross-examination has its limitations and that the temptations to make a false or exaggerated claim can exist. However, because this court has consistently strictly construed the statute in favor of the competency of the witnesses to testify,[4] we conclude it was not error to allow Mrs. O'Dell to testify because the conversation was not with her personally.

Mrs. O'Dell's adult daughter was permitted to testify as to three conversations she had with the deceased to the effect that Mrs. O'Dell would be paid well after his death. This testimony was objected to upon the ground of the incompetency of the witness. Counsel argues that she was an interested party because she would be an heir to her mother's estate and because it relieved her of a possible obligation to support her mother. It was further objected to upon the ground of hearsay.

The statements testified to were statements against interest by the deceased and constituted admissions, and as such were admissible as exceptions to the hearsay rule. *Estate of Powell* (1932), 206 Wis. 513, 519, 520, 240 N. W. 122.

As to the daughter's competency as a witness, she was not a party to the transaction and had no direct interest in her mother's claim. Any pecuniary interest that she

---

[4] *See Estate of Molay* (1970), 46 Wis. 2d 450, 458, 175 N. W. 2d 254, and cases cited therein.

might have had is too remote and speculative to bring her within the restrictions of the dead man's statute.[5]

The testimony of both Mrs. O'Dell and her daughter was admissible. This testimony, together with other credible evidence offered by the claimant, was sufficient to sustain the jury's findings that the deceased, Charles Nale, and the claimant, Sylvia O'Dell, did enter into an agreement whereby she was to perform housekeeping services for him and to be compensated at or after his death.

The objectors-appellants contend that notwithstanding the verdict the court should have directed a judgment that disallowed any compensation for services performed more than two years prior to the death of the decedent by virtue of the statute of limitations set forth in sec. 893.21 (5).[6]

The statute would clearly limit to two years any recovery for weekly, monthly or annual payments for personal services upon an express contract. It also limits recovery to two years where there was no express agreement as to compensation and recovery is based upon *quantum meruit*.[7] Here there was no express agreement as to the amount of compensation and the jury findings were based upon *quantum meruit*, namely, the reasonable value of the services rendered. Accordingly, her recovery should be limited to the last two years unless the facts of this case make it an exception to the general rule. We believe this case presents an exception.

This was not an agreement giving the claimant all or part of the estate which would be void under the statute

---

[5] See *Will of Williams* (1950), 256 Wis. 338, 41 N. W. 2d 191; *Estate of Novak* (1923), 181 Wis. 16, 193 N. W. 1000; *Nelson v. Ziegler* (1928), 196 Wis. 426, 220 N. W. 194.

[6] "Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services."

[7] See *Estate of Voss* (1963), 20 Wis. 2d 238, 243, 244, 121 N. W. 2d 744.

of frauds and recovery limited to a *quantum meruit* recovery for a period of two years as held in cases cited by the appellants. Nor is it a case where she was to be compensated at any fixed date during his lifetime or specified intervals, nor where no time at all was specified. The agreement established by the evidence in this case was that she was to be compensated at or after his death. Accordingly, Mrs. O'Dell had no right to demand payment nor did she have a cause of action until the death of Charles Nale and her claim was not limited by sec. 893.21 (5), Stats.

". . . In such a case the statute of limitations does not begin to run until the death of the promisor. Hence an action for the reasonable value of such services will lie at any time within six years after the death of the decedent, even though claimant began to render services many years prior to such death. [Cases cited.]" *Smith v. Freng* (1924), 182 Wis. 349, 354, 193 N. W. 996, 196 N. W. 887, 197 N. W. 170.[8]

We have examined other procedural errors claimed by the objectors and find none that reach the stature of prejudicial error.

*By the Court.*—Judgment affirmed.

---

[8] *Estate of Schaefer* (1952), 261 Wis. 431, 53 N. W. 2d 427; *Estate of Gerke* (1955), 271 Wis. 297, 73 N. W. 2d 506.